JUDGE BRICCETTI



11 CIV 8003

PREET BHARARA
United States Attorney
Southern District of New York
By:    MICHAEL J. BYARS
Assistant U.S. Attorney
86 Chambers Street, 3rd floor
New York, New York 10007
Telephone: (212) 637-2793
Facsimile: (212) 637-2717
Email: michael.byars@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

           v.

LARKIN, AXELROD, INGRASSIA & TETENBAUM,
LLP, and JOHN INGRASSIA,

                Defendants.

11 Civ. _____ (___)

**COMPLAINT**

---

The United States of America, by its attorney Preet Bharara, United States Attorney for the Southern District of New York, alleges as follows:

### NATURE OF THIS ACTION

1.     This is a civil rights lawsuit brought by the United States of America to redress discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act of 1990 ("Title III" and the "ADA"), 42 U.S.C. §§ 12181-12189, and its implementing regulation, 28 C.F.R. pt. 36, against a law firm and a lawyer for unlawfully discriminating against one of their own clients, an individual with a disability, by denying her access to the law firm's offices on more than one occasion because she was accompanied by her service animal.

2.  The Attorney General has reasonable cause to believe that discrimination on the basis of disability in violation of Title III of the ADA occurred and that defendants' conduct raises an issue of general public importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(II) and 28 C.F.R. § 36.503(b).

## JURISDICTION AND VENUE

3.  The Court has jurisdiction of this action pursuant to 42 U.S.C. § 12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345.

4.  Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b) because defendant Larkin, Axelrod is a law firm in this District and acts of discrimination occurred in this District.

## THE PARTIES

5.  Plaintiff is the United States of America.

6.  Defendant Larkin, Axelrod, Ingrassia & Tetenbaum, LLP ("Larkin, Axelrod" or the "firm") is a law firm with offices in Newburgh and Middletown, New York.

7.  Defendant John Ingrassia ("Ingrassia") is an attorney licensed to practice law in New York. At the time of the events alleged, and to the present, Ingrassia was and is a partner of Larkin, Axelrod.

## TITLE III OF THE ADA

8.  Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns,

operates or leases a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

9. Defendant Larkin, Axelrod is a place of public accommodation within the meaning of Title III because it is the office of a "lawyer ... or other service establishment." 42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104.

10. As the operator of a law office and as a partner of a law firm, defendant Ingrassia is a public accommodation within the meaning of Title III, 42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104, and is therefore subject to the nondiscrimination requirements of Title III of the ADA.

11. For purposes of Title III of the ADA, discrimination against individuals or classes of individuals with disabilities generally includes, among other things:

    a. outright denial of the "goods, services, facilities, privileges, advantages, and accommodations" of the entity, 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. § 36.202;

    b. the imposition or application of eligibility criteria that screen out or tend to screen out an individual on the basis of disability "from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary." 42 U.S.C. § 12181(b)(2)(A)(i); 28 C.F.R. § 36.301(a);

    c. the "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that

making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12181(b)(2)(A)(ii); 28 C.F.R. § 36.302.

12. The regulation implementing Title III specifically requires public accommodations such as defendants Larkin, Axelrod and Ingrassia to "modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c).

## FACTS

13. Lauren Klejmont is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102; 28 C.F.R. § 36.104. Klejmont has sustained spinal injuries and a closed head injury, which have caused her to have seizures, problems with her memory and difficulty with her balance. Klejmont walks with the assistance of a cane and a leg brace. Klejmont's condition is a physical impairment, and it substantially limits her performance of one or more major life functions, such as performing manual tasks, walking and working. Klejmont's physical impairments also substantially limit one or more bodily functions including the operation of her neurological and musculoskeletal systems. Klejmont also has a record of having a disability.

14. Based on a recommendation from her physician, Klejmont uses a German Shepard named "Reicha" that is trained to do work or perform tasks for Klejmont, such as picking up and carrying things for her, detecting and warning her of the onset of a seizure and helping her to stand up when she falls. Reicha is a service animal within the meaning of 28 C.F.R. § 36.104.

15. Klejmont retained Larkin, Axelrod in 2007 to represent her in a lawsuit arising from a motor vehicle accident.

16. Gerard J. Marino ("Marino") is an attorney licensed to practice law in New York. At the time of the events alleged, Marino was employed as a lawyer by Larkin, Axelrod. Marino's acts as alleged in this complaint were performed in his capacity as a lawyer at Larkin, Axelrod and are attributable to Larkin, Axelrod. Marino left his employment with Larkin, Axelrod in early 2011.

17. On January 29, 2009, Klejmont arrived at the Larkin, Axelrod offices located at 356 Meadow Avenue, Newburgh, New York, for a 4:45 p.m. conference to discuss the lawsuit (the "January 29, 2009 Incident"). Klejmont was accompanied by her service animal, Reicha.

18. Ingrassia and Marino met Klejmont in the Larkin, Axelrod waiting room and refused to meet with her in Ingrassia's office because she was accompanied by her service animal. They asked Klejmont to take Reicha outside and return for the meeting without the animal.

19. Klejmont explained to Ingrassia and Marino that Reicha was a service animal who was trained to assist her with specific physical disabilities, including by alerting her when she is about to have a seizure, carrying and picking up objects and helping her to stand up when she falls. Klejmont also told Ingrassia and Marino that Reicha, as a service animal, was allowed to accompany her wherever she went, without restriction.

20. Defendant Ingrassia responded that Klejmont could not enter his office while accompanied by her service animal because defendant Ingrassia was allergic to dogs, and insisted that she leave Reicha outside as a condition of the meeting.

21. Klejmont requested several times that the meeting be held in a conference room instead of in Ingrassia's office, but Ingrassia refused.

22. After trying unsuccessfully to persuade Ingrassia and Marino that she should be allowed to meet with them and discuss her lawsuit while accompanied by her service animal, Klejmont left the premises of Larkin, Axelrod and returned home with Reicha.

23. Klejmont wrote to Larkin, Axelrod on February 6, 2009, in part to complain about the firm's treatment of her during the January 29, 2009 Incident. Defendant Ingrassia responded on behalf of the firm by letter dated February 12, 2009. In his letter, Ingrassia asserted, among other things, that, due to his alleged allergies, he was unable to meet with her in his personal office, that he had not been aware that she had a service animal when the January 29, 2009 meeting was scheduled, and that, had he known of her service animal, he would have arranged for the meeting to take place in an alternate room at Larkin, Axelrod. Ingrassia also stated that the firm would accommodate her and her service animal by scheduling future meetings in an alternate room.

24. On January 13, 2010, Klejmont received a letter from Marino regarding the importance of signing releases that were necessary for her lawsuit to proceed. Klejmont called Marino to schedule a meeting to address questions that she had regarding the releases.

25. Notwithstanding Ingrassia's statements nearly one year earlier in his February 12, 2009 letter, Marino's January 13, 2010 letter demonstrates the firm's continued refusal to permit Klejmont to enter the Larkin, Axelrod offices with her service animal. Rather, Marino agreed to meet with Klejmont only if she agreed not to bring her service animal with her to Larkin, Axelrod; as an alternative, Marino offered to meet with Klejmont in the firm's parking lot, on the condition that her service animal would remain in her car for the duration of the meeting. Marino confirmed his offer, and the conditions thereto, in a letter on Larkin, Axelrod letterhead dated January 13, 2010, a true and correct copy of which is attached as Exhibit A.

26. On January 25, 2010, Marino wrote to Klejmont on Larkin, Axelrod letterhead regarding her need to sign, have notarized and return the releases so that her lawsuit could proceed. Marino's January 25, 2010 letter, a true and correct copy of which is attached as Exhibit B, again indicates that the firm was not prepared properly to accommodate Klejmont. In his letter, Marino reiterated that, while he would answer her questions regarding the releases by telephone, he would not meet with her in person unless she agreed not to bring her service animal into the Larkin, Axelrod offices or to meet him in the firm's parking lot.

## FIRST CLAIM FOR RELIEF

### For Violation of 42 U.S.C. § 12182

27. The United States repeats and realleges paragraphs 1 through 26 of the complaint as if fully set forth in this paragraph.

28. Defendants' refusal to permit Klejmont to enter the law firm's offices on January 29, 2009 violated the ADA.

29. The discriminatory acts of defendants were intentional, willful, and taken in disregard for Klejmont's rights.

## SECOND CLAIM FOR RELIEF

### For Violation of 42 U.S.C. § 12182

30. The United States repeats and realleges paragraphs 1 through 29 of the complaint as if fully set forth in this paragraph.

31. Larkin, Axelrod's January 13, 2010 refusal to meet with Klejmont, except under the conditions that she either agree not to enter the Larkin, Axelrod office with her service animal or agree to meet in the Larkin, Axelrod parking lot, violated the ADA.

32. The discriminatory acts of defendants were intentional, willful, and taken in disregard for Klejmont's rights.

## THIRD CLAIM FOR RELIEF

### For Violation of 42 U.S.C. § 12182

33. The United States repeats and realleges paragraphs 1 through 32 of the complaint as if fully set forth in this paragraph.

34. Larkin, Axelrod's January 25, 2010 refusal to meet with Klejmont, except under the conditions that she either agree not to enter the Larkin, Axelrod office with her service animal or agree to meet in the Larkin, Axelrod parking lot, violated the ADA.

35. The discriminatory acts of defendants were intentional, willful, and taken in disregard for Klejmont's rights.

## PRAYER FOR RELIEF

WHEREFORE, the United States requests that the Court enter judgment that:

a. Declares that the discriminatory actions, practices and policies of defendants as set forth above, violated Title III of the ADA, 42 U.S.C. §§ 12181-12189, and its implementing regulation, 28 C.F.R. pt. 36;

b. Enjoins defendant Larkin, Axelrod, its officers, agents and employees, defendant Ingrassia, and all other persons in active concert or participation with defendants, from discriminating on the basis of disability against Klejmont, other individuals with disabilities, and individuals related to or associated with an individual with a disability in violation of Title III of the ADA, 42 U.S.C. §§ 12181-12189, and its implementing regulation, 28 C.F.R. pt. 36;

c. Enjoins defendant Larkin, Axelrod, its officers, agents and employees, defendant Ingrassia, and all other persons in active concert or participation with defendants, from failing or refusing to adopt and implement a policy of nondiscrimination against persons with disabilities, including persons who use service animals, and from failing or refusing to make reasonable modifications to policies, practices and procedures to ensure that goods, services, facilities privileges, advantages and accommodations are afforded to individuals with disabilities, including those who use service animals, in a nondiscriminatory manner;

d. Awards monetary damages to Klejmont to compensate her for the discrimination she experienced;

e. Assesses a civil penalty against defendants as authorized by 42 U.S.C. §§ 12188(b)(2) and 28 C.F.R. § 36.504(a)(3) in an amount sufficient to vindicate the public interest; and

f. Grants such further relief as the interests of justice may require.

Date: ~~October~~ November 8, 2011
New York, New York

ERIC H. HOLDER, JR.
Attorney General

By: /s/ Thomas E. Perez
THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division


PREET BHARARA
United States Attorney
*Attorney for Plaintiff*

By: /s/ Michael J. Byars
MICHAEL J. BYARS
Assistant United States Attorney
86 Chambers Street, 3rd floor
New York, New York 10007
Telephone: (212) 637-2793
Facsimile: (212) 637-2717
Email: michael.byars@usdoj.gov